**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Ronald BYRD, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 17, 2009.

Filed Dec. 30, 2009.

Karen B. Jordan, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

David M. Walker, Philadelphia, for appellee.

BEFORE: STEVENS, GANTMAN, and ALLEN, JJ.

OPINION BY STEVENS, J.:

¶ 1 The Commonwealth appeals from an order entered in the Court of Common Pleas of Philadelphia County granting Appellee Ronald Byrd's motion to suppress a handgun seized by the police.[1] We reverse the suppression order entered below and remand for further proceedings.

¶ 2 The relevant facts and procedural history are as follows: Appellee was arrested and charged with violating the Uniform Firearms Act. On July 24, 2008, Appellee filed a counseled, pre-trial omnibus motion seeking to suppress evidence seized by the police, and on October 7, 2008, the matter proceeded to a suppression hearing, at which the sole testifying witness was Police Officer Matthew McCarthy. Specifically, Officer McCarthy testified that, on July 10, 2007, he and his partner, Police Officer Coleman, were on duty and patrolling with a caravan of marked police vehicles[2] in high crime areas investigating shootings in the district. N.T. 10/7/08 at 6–7. At approximately 9:30 p.m., as the caravan was traveling southbound on 13th street, Officer McCarthy observed a group of six or seven males, including Appellee, standing next to a green SUV at the corner of Williams and 13th Streets. N.T. 10/7/08 at 7. None of the police cruisers had their lights or sirens activated at this time. N.T. 10/7/08 at 8. Officer McCarthy observed as Appellee turned from the group and looked in the direction of the oncoming marked caravan of police cars. N.T. 10/7/08 at 8. Appellee bent down next to the green SUV, made a throwing motion with his extended right arm, and began walking northbound on 13th Street. N.T. 10/7/08 at 8. Officer McCarthy was unable to determine what item Appellee had thrown, and therefore, Officer McCarthy stopped Appellee. N.T. 10/7/08 at 8–9. Specifically, Officer McCarthy testified that:

> Due to the high crime area and the nature of the activity, I frisked him, placed him in the back of my vehicle, walked over to the green SUV, bent over right underneath the green SUV next to the curb, and I recovered a silver and black .357 Magnum Smith & Wesson revolver with rubber hand

1. In its notice of appeal, the Commonwealth has certified that the trial court's suppression order terminates or substantially handicaps the prosecution.

2. Officer McCarthy explained that the "caravan" included three or four or five marked police vehicles. N.T. 10/7/08 at 7, 10.

grips, serial number BED–4806, loaded with five hollow tip rounds, placed on property receipt 2735607.

N.T. 10/7/08 at 9.

¶ 3 Officer McCarthy confirmed that the gun was recovered "[r]ight where [Appellee] bent down, the gun was maybe a foot, a foot and a half underneath the SUV." N.T. 10/7/08 at 9. Officer McCarthy saw no other object under the SUV, and he indicated that, prior to Appellee making the tossing motion, the police had not said anything to him. N.T. 10/7/08 at 9–10.

¶ 4 On cross-examination, Officer McCarthy admitted that the caravan of marked police vehicles were traveling the "wrong way" on 13th Street, which is a one-way street, as they approached the group of males. N.T. 10/7/08 at 11. However, he noted the caravan was not traveling at a high rate of speed, and he reiterated that the caravan of vehicles did not have either its lights or sirens activated. N.T. 10/7/08 at 11. Officer McCarthy indicated he was traveling in the second or third vehicle in the caravan and was approximately fifty or sixty feet from Appellee when he saw Appellee bend down by the SUV. N.T. 10/7/08 at 12, 15. He indicated he did not have his gun drawn as he approached Appellee; however, he was unsure whether other officers had their guns drawn. N.T. 10/7/08 at 14. He was unsure whether anyone from the group ran as the police approached; however, it was "possible." N.T. 10/7/08 at 16. Officer McCarthy admitted that it was the police officers' intent to approach "anyone near 1300 Williams" to ask them about the shootings. N.T. 10/7/08 at 14. Moreover, after he frisked Appellee, Officer McCarthy placed Appellee in the back of the police vehicle so that he could determine if Appellee had discarded an item under the SUV. N.T. 10/7/08 at 17–18, 21.

¶ 5 On redirect-examination, Officer McCarthy testified that, besides Appellee, he saw no one else bend down by or making a tossing motion near the SUV. N.T. 10/7/08 at 21. Officer McCarthy testified that the reason he stopped Appellee was because of the fact Appellee was trying to conceal something from the police, and Officer McCarthy suspected the item was either drugs or a gun. N.T. 10/7/08 at 21. However, on recross-examination, Officer McCarthy admitted that Appellee was going to be stopped anyway in connection with the investigation of the shootings in the area. N.T. 10/7/08 at 22.

¶ 6 At the conclusion of Officer McCarthy's testimony, Appellee argued that he did not voluntarily abandon the gun and, in fact, the police "forced" the abandonment through their illegal seizure of Appellee. N.T. 10/7/08 at 23–24. Specifically, he argued "I think there's clearly forced abandonment when you have a group of three or four or five marked police cars coming the wrong way down the street...." N.T. 10/7/08 at 25. In response, the Commonwealth contended that Appellee did not have standing to challenge the suppression of the gun since he voluntarily abandoned the gun and the abandonment was not the result of coercion based on illegal police conduct. N.T. 10/7/08 at 23–24. Specifically, the Commonwealth argued "The [police] were simply driving down the street at the time this defendant made the tossing motion. There was nothing to show that they did anything to say that this defendant was stopped, seized, any sort of constitutional violation at the time that he made the tossing motion...." N.T. 10/7/08 at 25.

¶ 7 The trial court granted Appellee's motion to suppress the gun. In so doing, the trial court indicated the following:

As the stated purpose of this caravan was to stop anybody in this area regard-

less of what they were doing, I cannot rule that any activity further observed by these officers or this officer as described on this record would be constitutional.

\* \* \*

In regard to the force abandonment issue, a caravan of three to four police cars driving the wrong way down a one-way street in my mind is enough of a show of force to rise to forced abandonment.

N.T. 10/7/08 at 29–30.

¶ 8 The Commonwealth filed a timely notice of appeal, as well as a contemporaneous Rule 1925(b) statement, and the trial court filed a responsive Rule 1925(a) opinion, indicating, in relevant part, the following:

As a result of the above testimony,[3] this Court granted Appellee's motion to suppress evidence of the handgun. Because Officer McCarthy endeavored to stop Appellee and anybody else in the area, regardless of whether he had reasonable suspicion that criminal activity was afoot and regardless of whether he observed Appellee make a "throwing motion" beneath the aforesaid SUV, his stop and frisk of Appellee was unconstitutional. Furthermore, the mere observation of Appellee making a tossing motion, from a distance of 50 to 60 feet, did not support a reasonable suspicion that criminal activity was afoot, and there was no testimony that Appellee or anyone else fled from the officers or otherwise engaged in suspicious activity. This Court additionally found that Appellee's act of throwing his gun beneath the SUV resulted from the officers' un-

lawful show of force, and was therefore a "forced abandonment."

\* \* \*

In this case, Officer McCarthy observed *no* criminal activity and received *no* tip advising that Appellee was involved in any criminal activity. Nor did he observe Appellee flee the scene when the caravan of police vehicles streamed in his direction. From a vantage point of 50 to 60 feet, Officer McCarthy merely observed Appellee bend over and make a "throwing motion" in the vicinity of an SUV vehicle, which was located in an area of high crime. Officer McCarthy never observed a firearm in Appellee's possession and had no reason to suspect Appellee of having possessed one.

The facts and circumstances available to Officer McCarthy before he stopped Appellee simply do not support a reasonable suspicion that Appellee was engaged in criminal activity. Officer McCarthy failed entirely to point to "specific and articulable facts causing [him] to have a reasonable suspicion that criminal activity may be afoot," and his detainment of Appellee was therefore illegal. Officer McCarthy testified that he would have stopped Appellee regardless of whether he saw the latter making a "throwing motion," simply by virtue of Appellee's presence in a high crime area. As noted, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."

Furthermore, at the suppression hearing, the Commonwealth asserted that the officers' actions were irrelevant to

---

**3.** We note that the trial court appeared to find Officer McCarthy's testimony to be credible, and the findings of fact are not particularly at

issue in this case. Rather, at issue are the legal conclusions made by the trial court based upon these facts.

the admissibility of the firearm, as this item was abandoned by Appellee. For abandoned or relinquished property to be admitted into evidence, "[n]o improper or unlawful act can be committed by the officers prior to the evidence being abandoned or relinquished." Abandoned property is inadmissible "where the abandonment [was] coerced by unlawful police action."

Here, without reasonable suspicion to believe that Appellee (or anyone else) was involved in criminal activity, the police drove a caravan of approximately 3 to 5 marked patrol cars down the wrong way of a one way street. This caravan would have created an impressive show of force to any observer. The officers acted with the express purpose of coercively stopping Appellee (and everyone else on the block). As noted, neither the Fourth Amendment nor the Pennsylvania Constitution countenances such far-reaching authority to the police, so as to sanction the suspicion-less stop and seizure of a pedestrian. Because they had no basis to subject Appellee to any coercive police action, the Officers' conduct violated Appellee's right to be free from unreasonable seizures under the Pennsylvania and Federal Constitutions, and but for this unlawful conduct, Appellee would not have abandoned the subject firearm. Accordingly, the abandonment was coerced by unlawful police action, and evidence of the firearm was properly suppressed.

Trial Court Opinion filed 3/25/09 at 3–6 (italics in original) (quotations omitted) (footnote added).

¶ 9 The Commonwealth contends (1) Appellee's act of discarding his handgun at the mere sight of marked police vehicles was not a forced abandonment; but rather, constituted a voluntary relinquishment of the weapon; (2) Officer McCarthy had rea-sonable suspicion to stop and frisk Appellee until he could determine precisely what item Appellee had discarded; and (3) recovery of the handgun provided Officer McCarthy with probable cause to arrest Appellee.

¶ 10 In reviewing the grant of a motion to suppress, we are guided by the following standard of review:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Deck,* 954 A.2d 603, 606 (Pa.Super.2008) (citation omitted).

¶ 11 "It is axiomatic that a defendant has no standing to contest the search and seizure of items which he has voluntarily abandoned." *Commonwealth v. Tillman,* 423 Pa.Super. 343, 621 A.2d 148, 150 (1993) (quotation and quotation marks omitted). *See Commonwealth v. Pizarro,* 723 A.2d 675, 679 (Pa.Super.1998) ("A criminal defendant has no privacy expectation in property that he has voluntarily abandoned or relinquished.") (citations omitted). That is, before a defendant can challenge the seizure of physical evidence, he must demonstrate that he had both a possessory interest in the evidence and a legally cognizable expectation of privacy in the area from which the evidence was seized. *See Commonwealth v. Clark,* 746 A.2d 1128, 1133 (Pa.Super.2000) (citation omitted). As this Court has stated:

In *Commonwealth v. Shoatz,* 469 Pa. 545, 366 A.2d 1216 (1976), our Supreme Court delineated the test employed to determine whether an abandonment has occurred:

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. The issue is not abandonment in the strict property-right sense, *but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.*

In other words, "[a]bandonment can be established where an individual's surrender of possession of the property constitutes such a relinquishment of interest in the property that a reasonable expectation of privacy may no longer be asserted."

*Clark,* 746 A.2d at 1133–1134 (quotations omitted) (italics in original).

■ ¶ 12 "Although abandoned property may normally be obtained and used for evidentiary purposes by the police, such property may not be utilized where the abandonment is coerced by unlawful police action." *Tillman,* 621 A.2d at 150 (quotations, quotation marks, and citations omitted).

In considering whether the abandoned or relinquished property is admissible, our supreme court has held that initial illegality taints the seizure of the evidence ... [because] in such a situation it cannot be said that there was a 'voluntary abandonment or relinquishment' of the evidence.... No improper or unlawful act can be committed by the officer *prior* to the evidence being abandoned [or relinquished].

*Pizarro,* 723 A.2d at 679 (emphasis in original) (quotation, quotation marks, and citation omitted). *See Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914, 918 (excluding evidence holding that "[t]he causative factor in the abandonment presently under consideration was the unlawful and coercive action of the police in chasing the defendant in order to seize him."); *In the Interest of Evans,* 717 A.2d 542, 545 (Pa.Super.1998) ("When the causative factor in the abandonment is an unconstitutional search and seizure, the contraband must be suppressed.") (citations omitted).[4]

■ ¶ 13 In the case *sub judice,* the trial court accepted Officer McCarthy's testimony that Appellee threw the handgun under the SUV as indicated *supra. See* Trial Court Opinion filed 3/25/09 at 1–3. As a matter of law, we conclude the evidence establishes that Appellee's behavior manifested a clear intent to relinquish control of the handgun. *See Pizarro, supra.* That is, Appellee abandoned the handgun when he discarded it under the SUV, which was parked on a public street, and then began to walk away from the scene. *See In the Interest of Evans, supra* (where the appellant, who was standing on the street, threw a plastic bag of drugs in

---

4. We note that this principle of "forced abandonment" is not recognized under the Fourth Amendment of the United States Constitution, although it is under Article I, Section 8 of the Pennsylvania Constitution. *See Commonwealth v. Jones,* 978 A.2d 1000 (Pa.Super.2009). "While Pennsylvania recognizes the principle of forced abandonment, that legal theory requires that the abandonment of contraband or evidence be precipitated by illegal police conduct." *Id.* at 1005 n. 6 (citation omitted).

response to seeing the police, the appellant had abandoned the drugs); *Tillman, supra* (where the appellant, who was standing on the street, dropped a container on the ground and then walked away, the container had been abandoned).

¶ 14 Therefore, the question we now face is whether Appellee's abandonment was caused by any unlawful and coercive action of the police officers. *See Tillman, supra.* That is, we must determine whether, ***prior*** to Appellee abandoning the handgun, the police coerced (forced) the abandonment. *See Pizarro, supra.*

¶ 15 Here, the trial court found that, at 9:30 p.m., a caravan of three to five marked police vehicles were traveling the "wrong way" on 13th Street, which is a one-way street in Philadelphia. None of the police vehicles had its lights or sirens activated, and the caravan was not traveling at a high rate of speed. Officer McCarthy, who was in the second or third vehicle in the caravan, was approximately fifty to sixty feet from Appellee, who was standing in a group of six or seven males, when Appellee turned and looked in the direction of the oncoming caravan of police cars. In response, Appellee bent down and threw the handgun under the SUV. Prior to Appellee throwing the handgun, the police had not said anything to Appellee.

¶ 16 The trial court found that the police caravan of three to five marked police vehicles, traveling the wrong way on a one way street, "created an impressive show of force." Trial Court Opinion filed 3/25/09 at 6. Ultimately, the trial court concluded the police's show of force was unlawful and the causative factor in Appellee abandoning the handgun. Trial Court Opinion filed 3/25/09 at 6. We disagree with the trial court's conclusion that, as a matter of law, the "causative factor in the abandon-

ment" was any unlawful action on the part of the police, *In the Interest of Evans, supra,* and we find this Court's decision in *Commonwealth v. Pizarro,* 723 A.2d 675 (Pa.Super.1998), to be instructive.

¶ 17 In *Pizarro,* two officers were on routine patrol in a marked Ford Explorer when they observed the defendant and another man on the street engaging in a suspected drug transaction. *Id.* at 677. The police observed as the defendant ran to a corner property and retrieved items from a brown paper bag. *Id.* The items were ultimately given to the driver of a Buick in exchange for money. *Id.* As the officers prepared to approach the defendant, a marked police cruiser, whose operator was on an unrelated, routine patrol, arrived on the scene. *Id.* The defendant spotted the marked cruiser but did not notice the marked Ford Explorer. *Id.* Immediately, the defendant fled in the opposite direction of the cruiser, which did not attempt to pursue the defendant. *Id.* After observing the defendant's reaction to the cruiser, the officers in the Ford Explorer followed the defendant into a grocery store, and detained him therein. *Id.* The police went back to the area where the drug transaction had occurred and retrieved the brown paper bag, which the defendant had left behind on the lawn. *Id.* The brown paper bag contained illegal narcotics. *Id.* at 678.

¶ 18 The lower court applied the forced abandonment doctrine and suppressed the narcotics in *Pizarro.* In reversing the suppression court's order suppressing the narcotics on this basis, this Court stated the following:

A police cruiser passing through the neighborhood on routine patrol does not amount to police coercion compelling the abandonment of contraband. *Commonwealth v. Riley,* 715 A.2d 1131, 1134 (Pa.Super.1998) (mere approach by a

law enforcement official does not amount to police coercion requiring suppression of evidence abandoned by the defendant); *[In the] Interest of Evans,* 717 A.2d at 545; *Tillman,* 621 A.2d at 150. When the cruiser passed through the neighborhood, [the defendant and his cohort] were not deprived of their freedom in any significant way, nor were they placed in a situation in which they could believe reasonably that their freedom of action was restricted by police conduct. *See Commonwealth v. Matos,* 543 Pa. 449, 451–52, 672 A.2d 769, 770–771 (1996) (a suspect is seized only, when in view of all the circumstances, a reasonable person would have believed he was not free to leave). None of the police officers engaged in activity which could by any stretch of the imagination be understood to be an act of unlawful coercion. It was [the defendant's] fear of detection, as opposed to any threat or show of force by the police, that induced him to flee the scene. [The defendant's] sensitivity to the risk of police detection does not establish that his abandonment was forced. Hence, we conclude [the defendant] voluntarily abandoned [brown paper bag,] thus relinquishing any expectation of privacy over the contents therein. *See Tillman,* 621 A.2d at 150 (where police officers did not exit their vehicle until after witnessing defendant spy them, toss a container to the ground and walk away, the container was not abandoned as the result of any police coercion).

The suppression court found that [the police] lacked justification to detain [the defendant] at the grocery and, therefore, suppressed the [narcotics] that [the officer] had recovered from the lawn.....

This conclusion is fundamentally flawed as [the defendant] had abandoned the [narcotics] when he ran from the cruiser before the police officers initiated pursuit. The [narcotics were] not the fruit of an illegal seizure because it was "seized independently of any unlawful police conduct, i.e., it was abandoned prior to the police showing any interest in [the defendant]." *Tillman,* 621 A.2d at 151 (even if seizure was illegal, evidence was not subject to suppression because it was abandoned prior to the time that police showed any interest in the defendant).

*Pizarro,* 723 A.2d at 679–80 (citations and emphasis omitted).

¶ 19 In the case *sub judice,* we likewise conclude that Appellee was not deprived of his freedom in any significant way nor could he reasonably believe that his freedom of action was being restricted by police conduct prior to abandoning the handgun. While up to five marked police cruisers were traveling the wrong way on a one way street, there is no indication that the cruisers' lights or sirens were activated and the cruisers were not traveling at a high rate of speed. Moreover, there is no evidence that the police showed any interest in Appellee or made any statements to him prior to Appellee discarding the weapon. *See Tillman, supra.* In fact, Officer McCarthy, who was in the second or third vehicle, testified he was fifty to sixty feet from Appellee when he observed the abandonment.[5] As in *Pizarro,* it is clear to this Court that it was Appellee's own fear of detection, as opposed to any threat or show of force by the police, that induced him to abandon the handgun. *See Commonwealth v. Hall,* 475 Pa. 482, 380 A.2d 1238 (1977) (where

5. The evidence does not suggest that any officer exited the cruisers prior to Appellee abandoning the handgun. However, assuming, *arguendo,* such was the case, this fact alone would not rise to the level of coercion. *See In the Interest of Evans, supra* (indicating police merely stepping out of a police car is not unlawful police action).

police patrolling an area known for narcotics trafficking made a u-turn and double-parked their vehicle after observing three individuals, and where as the officers approached the individuals and were about ten feet away, the defendant dropped white tissue ball containing heroine, police action was noncoercive encounter). Therefore, once the evidence was abandoned, the police were free to retrieve it and use it for evidentiary purposes. *See In the Interest of Evans, supra.*

¶ 20 We note that the trial court suggests the handgun should be suppressed on the basis Officer McCarthy did not have either reasonable suspicion to detain Appellee or probable cause to arrest after Officer McCarthy observed Appellee abandon the handgun. *See* Trial Court Opinion filed 3/25/09 at 5. Assuming, *arguendo*, the trial court is correct, "[s]uppression of evidence is not available as a remedy for unlawful police conduct where the evidence was obtained by means independent of the unlawful police conduct." *Tillman*, 621 A.2d at 150 (quotation, quotation marks, and citation omitted). Since the handgun was seized independently of any unlawful police conduct, i.e., it was abandoned prior to the police showing any interest in Appellee, we cannot regard the seizure or arrest of Appellee as a basis to suppress the handgun. *See id.*

¶ 21 For all of the foregoing reasons, we reverse the trial court's order granting Appellee's motion to suppress the handgun, and we remand for proceedings consistent with this decision.

¶ 22 Reversed; Remanded; Jurisdiction Relinquished.

¶ 23 GANTMAN, J., CONCURS IN THE RESULT.