J-S16038-24

2024 PA Super 121

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELISE COLES | : | No. 980 EDA 2023 |

Appeal from the Order Entered March 17, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008713-2021

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED JUNE 7, 2024**

The Commonwealth appeals[1] from the March 17, 2023 order granting

the pre-trial suppression motion filed by Appellee, Elise Coles.  After careful

review, we reverse the suppression order and remand for proceedings

consistent with this opinion.

The Honorable Mark J. Moore summarized the relevant facts of this case

as follows:

> On September 24, 2020, [Appellee] was among a
> group of individuals who were allegedly observed by
> Philadelphia police officer Ryan Struble [] sitting on
> the southwest corner of Stanley and Norris Streets in
> the city and county of Philadelphia smoking what

---

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth certified, pursuant to Pa.R.A.P. 311(d), that the
suppression court's March 17, 2023 order will terminate or substantially
handicap the prosecution.

police believed were brown hand-rolled cigarettes. Officer Struble further noted that there were multiple plumes of smoke around them, along with the odor or marijuana.

Officers Struble and his partner were assigned to the 22nd Police District at the time and were on routine patrol that evening at approximately 8:30 p.m. The officers were in full uniform driving a marked police cruiser.

According to Officer Struble, [Appellee] was seen on the coiner with approximately two other individuals. The officers subsequently exited their vehicles and approached [Appellee] and the others. Per Officer Struble, they were attempting to investigate smoking of marijuana on the highway.

As the Officers approached the group, [Appellee] ran across the street and directly into the property at 1963 N. Stanley Street. Officer Struble described [Appellee] as wearing a red hat, dark jacket, dark pants and carrying a Black North Face backpack. The house [Appellee] ran into was approximately 15-20 feet away from the corner.

While detaining [Appellee], Officer Struble received information from a fellow officer (who ran into the property with Struble and other officers) that somewhere in the kitchen they had found the Black backpack [Appellee] was seen carrying.

Police Officer [Joshua] Kling testified that he and his partner, Officer Nestel [] were also on patrol on the evening in question and were following behind Officer Struble and his partner. After exiting their car, Officer Kling and his partner went inside the property with Struble.

Somewhere inside the property, Officer Kling testified that he saw [Appellee] without the Black backpack. Which was in the kitchen area. He testified that it was about 15 to 20 feet away from where he made contact with [Appellee] in the house. At that time, he picked

up the backpack by the handle on top of it and continuously squeezed the bottom of the bag. Officer Kling testified that due to his training and experience that he was able to immediately identify that there was a gun in the backpack. Once he opened the backpack, Officer Kling recovered a 32 caliber Colt Model 1903 handgun.

[Appellee] was subsequently placed into temporary custody while the Officers checked to see if she had a license to carry a firearm. [Appellee] was ultimately arrested after police discovered she did not have a license to possess a firearm.

There was no one else in the property other than [Appellee] and the officers.

Both Officers Struble and Kling had body[-]worn cameras during this incident; however, Struble's camera was only activated once he entered the house looking for [Appellee], and Officer Kling's camera was only activated once [Appellee] was placed inside the back of the police cruiser.

During the incident, the owner of 1963 North Stanley Street returned to the property. Body[-]worn camera video showed the owner questioning police about why they were in his house but there was no video testimony of him specifically saying that [Appellee] did not have any permission to be in the property.

Officer Struble gave a statement to Central Detectives regarding this incident. At the Motion to Suppress, Struble paraphrased the owner's response to the issue of whether [Appellee] had permission to be inside the property as this:

> it was something to the very strong effect that, I know her from the street, but she shouldn't be in my house or doesn't have permission to be in my house.

However, when shown his actual statement on redirect examination, Officer Struble testified that the

- 3 -

> owner did know [Appellee] from the block but did not know why she would be in his house.

Suppression court opinion, 8/25/23 at 2-4 (citations to notes of testimony and internal quotation marks omitted).

Appellee was subsequently charged with firearms not to be carried without a license and carrying firearms on public streets or public property in Philadelphia.[2]   On March 29, 2022, Appellee filed an **omnibus** pre-trial suppression motion, arguing that the seizure of the firearm was unconstitutional because the police did not have reasonable suspicion or probable cause to search the backpack.  **See** Motion to Suppress, 3/29/22 at 1-2; notes of testimony, 3/17/23 at 63.  On March 17, 2023, the suppression court conducted an evidentiary hearing on Appellee's motion, during which Officers Struble and Kling testified.  Following the hearing, the suppression court granted Appellee's suppression motion that same day.  This timely appeal followed on April 14, 2023.[3]

The Commonwealth raises the following issue for our review:

> 1.  Did the [suppression] court err in suppressing a gun found in a backpack [Appellee] abandoned in a house she ran into while fleeing the police where the house was not hers, she did not have permission to enter it, and she did not demonstrate a reasonable expectation of

---

[2] 18 Pa.C.S.A. §§ 6106(a) and 6108, respectively.

[3] The Commonwealth and the suppression court have complied with Pa.R.A.P. 1925.

privacy therein?

Commonwealth's brief at 4.

Our standard of review in addressing a suppression court's order granting a suppression motion is well settled.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Korn*, 139 A.3d 249, 253-254 (Pa.Super. 2016) (internal citations and quotation marks omitted), *appeal denied*, 159 A.3d 933 (Pa. 2016).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee an individual's freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation marks omitted), *appeal denied*, 987 A.2d 158 (Pa. 2009). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require

law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Commonwealth v. Reppert***, 814 A.2d 1196, 1201 (Pa.Super. 2002) (citation omitted). This court has recognized three types of interactions between members of the public and the police:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Way***, 238 A.3d 515, 518 (Pa.Super. 2020) (citation omitted). Thus, pursuant to the Fourth Amendment, a person may not be lawfully seized, either by means of an investigative detention or a custodial detention, unless the police possess the requisite level of suspicion.

In the instant matter, the suppression court found that "the Officers lacked reasonable suspicion and probable cause to search [Appellee's] backpack." Suppression court opinion, 8/25/23 at 6. The suppression court concluded that it "did not find anything presently dangerous about [Appellee] or her backpack that would justify the Officers searching that backpack[,]" and their "unexplained fixation on [Appellee's] backpack amounted to a mere hunch that was unrelated to the potential criminal activity afoot at the intersection of Stanley and Norris Streets that evening." ***Id.*** at 6-7. The

- 6 -

suppression court further opined that Appellee has a reasonable expectation of privacy in her backpack and did not possess the intent to abandon. ***Id.*** at 7-8.

Our review of both the record and the relevant caselaw does not support the suppression court's conclusions. It is well settled in this Commonwealth that "a defendant has no standing to contest the search and seizure of items which he has voluntarily abandoned." ***Commonwealth v. Hall***, 305 A.3d 1026, 1033 (Pa.Super. 2023) (citation omitted). "That is, before a defendant can challenge the seizure of physical evidence, he must demonstrate that he had both a possessory interest in the evidence and a legally cognizable expectation of privacy in the area from which the evidence was seized." ***Commonwealth v. Byrd***, 987 A.2d 786, 790 (Pa.Super. 2009) (citation omitted). This Court has held:

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. The issue is not abandonment in the strict property-right sense but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

***Commonwealth v. Barnette***, 760 A.2d 1166, 1170–1171 (Pa.Super. 2000) (citations and emphasis omitted), ***appeal denied***, 781 A.2d 138 (Pa. 2001).

We further note that, "[a]lthough abandoned property may normally be obtained and used for evidentiary purposes by the police, such property may not be utilized where the abandonment is coerced by unlawful police action." **Byrd**, 987 A.2d at 791 (citation omitted). "When the causative factor in the abandonment is an unconstitutional search and seizure, the contraband must be suppressed." **In the Interest of Evans**, 717 A.2d 542, 545 (Pa.Super. 1998) (citation omitted), **appeal denied**, 736 A.2d 604 (Pa. 1999).

In the case **sub judice**, the record reflects that on the evening of September 24, 2020, Appellee fled from uniformed officers after they approached her and her cohorts on a street corner to conduct lawful investigation with respect to their apparent use of marijuana. Notes of testimony, 3/17/23 at 7-12. During the course of her flight, Appellee voluntarily abandoned a black North Face backpack she was observed to be carrying by entering an adjacent house she did not have permission to enter; discarding it in the kitchen; and then attempting to flee back out of the residence before the police stopped her. **Id.** at 12-18. The record further reflects that at the time the officers retrieved and searched the backpack in question, Appellee had already abandoned it. **Id.** at 16, 34-35, 67-68. Because Appellee abandoned the backpack in a house she had no right to enter, it logically follows that she did not have a reasonable expectation of privacy in the backpack and its contents – namely, an unlicensed 32-caliber Colt Model 1903 handgun – when the police searched it. **Id.** Contrary to the

suppression court's conclusion, therefore, Officer Kling needed neither reasonable suspicion nor probable cause to search Appellee's discarded bag. *See Hall*, 305 A.3d at 1033.

Based on the foregoing, we find that the suppression court erred in granting Appellee's pre-trial suppression motion, reverse the suppression court's March 17, 2023 order, and remand this case for trial.

Order reversed. Case remanded for trial. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/7/2024