J-S12038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NAEEM K. HUTCHINSON | : | No. 1624 EDA 2024 |

Appeal from the Order Entered May 31, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004690-2023

BEFORE: STABILE, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 6, 2025**

The Commonwealth of Pennsylvania has filed an interlocutory appeal challenging the trial court's decision to grant suppression in the prosecution of Naeem K. Hutchinson (hereinafter, "Hutchinson").[1]  Because we conclude that the trial court abused its discretion in granting Hutchinson's motion to suppress on grounds not raised in the motion, we reverse the order granting suppression and remand for further proceedings.

The trial court set forth the evidence presented at the suppression hearing as follows:

> On March 29, 2023, Officer [Zachary] Deperro[] and his partner were on duty wearing full police uniforms and operating a marked

---

[1] The Commonwealth has properly certified this appeal.  **See** Pa.R.A.P. 311(d) (permitting the Commonwealth to "appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution").

police vehicle. Their tour brought them to the area of 6000 Delancey Street around 5:15 p.m. At this time, Officer Deperro observed ten to fifteen males gathered on the sidewalk in front of a vacant lot. Officer Deperro testified that the 6000 block of Delancey is known for being a location of non-fatal shootings, homicides, narcotic sales[,] disturbances, and the location of which the "Sixty" gang operates out of. Because it is a high crime area[,] Officer Deperro instructed the men to disperse. He then continued his patrol.

Later, at approximately 6:45 p.m., as a part of his routine patrol, Officer Deperro was once again in the area of 6000 Delancey Street. He observed the same ten to fifteen males in front of the same vacant lot. The officers pulled directly in front of the vacant lot to disperse the crowd again, approximately fifteen to twenty feet from the men. Officer Deperro testified that[,] when he noticed the men in the vacant lot, he did not observe any firearms, nor did he observe any of the men trying to conceal a firearm. As Officer Deperro exited the vehicle "multiple males[,] unprovoked, fled on foot." About eight of the ten to fifteen males fled.

Officer Deperro pursued four of the men on foot through the vacant lot and down an alleyway between Delancy Street and Spruce Street. [Hutchinson] and one of the four men knelt at the entrance of the alleyway. Officer Deperro continued to pursue the other two men down the alleyway and northbound on Spruce Street where he apprehended them. [Hutchinson] was eventually found under a parked vehicle and arrested. Officer Deperro was not the officer who found and apprehended [Hutchinson]. However, Officer Deperro testified that he was familiar with [Hutchinson] from prior interactions. A total of three firearms were recovered between the 6000 block of Delancy Street and the 6000 block of Spruce Street by police.[2]

Trial Court Opinion ("TCO"), 8/2/24, at 2-3 (citations to notes of testimony omitted).

Hutchinson was arrested on March 30, 2023, and charged with three

_____

[2] Hutchinson was ultimately charged with possessing only one of these firearms.

violations of the Uniform Firearms Act.[3]  Hutchinson filed a motion to suppress on February 1, 2024.  After a hearing, the motion was granted on May 31, 2024.  The Commonwealth then timely filed its notice of appeal on June 5, 2024.  Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue in this appeal:

Did the lower court err by suppressing a gun where the Commonwealth refuted [Hutchinson's] claim that the police lacked reasonable suspicion to pursue him?

Commonwealth's Brief at 3.

In addressing the Commonwealth's claim that suppression was improperly granted, we first consider the applicable standard of review:

"When reviewing an order granting a defendant's motion to suppress evidence, we are bound by th[e suppression] court's factual findings to the extent that they are supported by the record, and we consider only the evidence offered by the defendant, as well as any portion of the Commonwealth's evidence which remains uncontradicted, when read in the context of the entire record.  Our review of the legal conclusions which have been drawn from such evidence, however, is *de novo*, and, consequently, we are not bound by the legal conclusions of the lower courts.  Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing."

***Commonwealth v. James***, 332 A.3d 859, 862–63 (Pa. Super. 2025) (quoting ***Commonwealth v. Barnes***, 296 A.3d 52, 55 (Pa. Super. 2023)).

In the motion to suppress, Hutchinson argued that he "would not have abandoned any property but for the unlawful and coercive tactics of the

_____

[3] Hutchinson was charged with violating 18 Pa.C.S. §§ 6105, 6106, and 6108.

- 3 -

Philadelphia Police Department officers, namely through their chase of [Hutchinson] on Delancey Street, through the alleyway, and out onto Spruce Street." Memorandum of Law in Support of Motion to Suppress ("Memorandum of Law"), 5/17/24, at 15. Hutchinson's argument raises the issue of forced abandonment.

When dealing with the suppression of evidence, our review begins with the recognition that both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *James*, 332 A.3d at 863. However, "[n]ot every encounter between a law enforcement officer and a citizen constitutes a seizure warranting constitutional protections." *Id.* (citation omitted). Our courts recognize three distinct levels of interaction between police officers and citizens that guide our review of this matter:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Way*, 238 A.3d 515, 518-19 (Pa. Super. 2020) (citation omitted).

Further, the Fourth Amendment generally requires that police officers obtain a warrant before they intrude into a place where a citizen possesses an expectation of privacy that our society is prepared to recognize as reasonable.

*Commonwealth v. Kane*, 210 A.3d 324, 330 (Pa. Super. 2019). A recognized exception to the warrant requirement exists when property has been abandoned. *Id.*

"[T]o prevail on a suppression motion, a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership or possessory interest." *Id.* "Simply put, no one has standing to complain of a search or seizure of property that he has voluntarily abandoned." *Commonwealth v. Hall*, 305 A.3d 1026, 1033 (Pa. Super. 2023) (citation omitted). *See also Commonwealth v. Byrd*, 987 A.2d 786, 790 (Pa. Super. 2009) ("It is axiomatic that a defendant has no standing to contest the search and seizure of items which he has voluntarily abandoned.").

Our Supreme Court set forth the test used to determine whether an abandonment has occurred in *Commonwealth v. Shoatz*, 366 A.2d 1216 (Pa. 1976), which was recently re-stated as follows:

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.
>
> In other words, abandonment can be established where an individual's surrender of possession of the property constitutes

such a relinquishment of interest in the property that a reasonable expectation of privacy may no longer be asserted.

**Byrd**, 987 A.2d at 791 (cleaned up). Moreover, "although abandoned property may normally be obtained and used for evidentiary purposes by the police, such property may not be utilized where the abandonment is coerced by unlawful police action." **Id.**[4]

In considering whether the abandoned or relinquished property is admissible at trial, we stress that any initial illegality in police conduct during the interaction will taint the disputed seizure because it cannot be said that abandoning the evidence was a voluntary act. **Id.** "[W]hen contraband is discarded by a person fleeing from a police officer who possesses **neither probable cause to arrest nor reasonable suspicion to conduct an investigative detention**, the contraband is the fruit of an illegal seizure." **James**, 332 A.3d at 867 (citation and original brackets omitted; emphasis in original).

Instantly, Hutchinson argued that officers had neither reasonable suspicion nor probable cause to detain him — and, thus, their chasing him was illegal and coercive — because he was not engaged in criminal conduct when standing at the side of the roadway with the other men. When litigating the

_____

[4] We note that the principle of forced abandonment is not recognized under the Fourth Amendment, **see California v. Hodari D.,** 499 U.S. 621 (1991), although the doctrine is available under Article 1, Section 8 of the Pennsylvania Constitution. **Commonwealth v. Matos**, 672 A.2d 769, 776 (Pa. 1996). In Pennsylvania, the principle of forced abandonment requires the abandonment of contraband or evidence to be precipitated by illegal police conduct. **Commonwealth v. Pollard**, 299 A.2d 233 (Pa. 1973).

motion to suppress below, he explained:

> Rather than speak with the police, [Hutchinson] ran from the scene, which was his right as a freeborn citizen of Pennsylvania and the United States of America. [Hutchinson] was entitled to leave the scene, whether it be at a slow pace or by running. [Hutchinson] was under no obligation to stop, wait, and talk to the police as there was no reasonable suspicion or probable cause to believe that [Hutchinson] was engaged in any criminal conduct.

Memorandum of Law at 14. Hutchinson further argued that his case was on all fours with the case of *Commonwealth v. Jeffries*, 311 A.2d 914 (Pa. 1973). Accordingly, we consider that decision.

In *Jeffries*, Jeffries was walking on a street in Pittsburgh when he observed four police officers sitting in an unmarked police vehicle. *Id.* at 916. When he noticed the officers, Jeffries "quickened his pace." *Id.* One officer responded by getting out of the police car; as the officer approached him, Jeffries began to run away. *Id.* During the chase, the officer saw Jeffries throw a pack of cigarettes under a car parked on the street. *Id.* After Jeffries was apprehended, the officer returned to pick up the discarded package and discovered several foil-wrapped packages of a substance later determined to be heroin therein. *Id.*

On appeal to our Supreme Court, Jeffries argued that the evidence should have been suppressed. In response, the Commonwealth contended that Jeffries' flight provided the officer with the requisite probable cause for his arrest. However, the Court noted that flight, standing alone, had consistently been held to be insufficient to support a finding of probable cause to arrest. *Id.* Police must have some additional factor to couple with the

element of flight to establish probable cause for an arrest.  *Id.*

The Commonwealth then attempted to justify the officer's action as occurring during an investigatory stop.[5]  The Court rejected this attempt, however, noting that a *Terry* stop is proper when police are able to "point to articulated facts which give rise to the reasonable belief criminal activity is afoot." *Id.*at 917.  The Court found that such a reasonable belief was lacking in *Jeffries*.  The Court explained that "there is not one fact which would give rise to the reasonable belief [that] Jeffries was involved in criminal activity." *Id.*  In addressing the claim of forced abandonment, the Court stated: "[T]he initial illegality tainted the seizure of the evidence since the throwing was the direct consequence of the illegal entry.  In such a situation[,] it cannot be said that there was a 'voluntary abandonment' of the evidence." *Id.*  It further elaborated:

> The causative factor in the abandonment presently under consideration was the unlawful and coercive action of the police in chasing Jeffries in order to seize him.  This is not a situation where the party spontaneously abandons the property upon sight of the police, or where the police are not involved in an unlawful act towards the accused.  We instantly have an unlawful act which motivated the abandonment.

*Id.* at 918.

Here, Hutchinson argued in his motion that, like in *Jeffries*, he simply ran from Officer Deperro, and that such flight from police, without more, constitutes neither reasonable suspicion to stop nor probable cause to arrest.

---

[5] Investigatory stops were first set forth by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968).

Thus, Hutchinson concluded that suppression was required.

Hutchinson is incorrect in stating that the only factor that the officers had to consider in determining whether to effectuate a stop of his person was his flight from the officers. Rather, Officer Deperro testified that the location where the men were standing as the officers approached was a high crime area: "It's a known block the south side 60 gang operate[s] out of. I've responded to multiple homicides and nonfatal shooting incidents and narcotics sales disturbances [in that location]." N.T. Hearing, 5/31/24, at 9-10. The presence of the men in a high crime area is decisive. Our courts have stated consistently that, while flight alone from police will not establish reasonable suspicion, **unprovoked flight in a high crime area** is sufficient to establish reasonable suspicion. *See, e.g.*, *Barnes,* 296 A.3d at 57-58; *Commonwealth v. McCoy*, 154 A.3d 813, 819 (Pa. Super. 2017) (holding that evasive behavior in a high crime area along with unprovoked flight established reasonable suspicion).

In the case at bar, officers noticed several men in a high crime area of town. The men were asked to disburse but remained at that location. When officers passed the same spot an hour later and the men were still there, the officers decided to exit their police vehicle. At that point, several men, including Hutchinson, ran away. Once the men fled unprovoked from the officers in a high crime area, the officers had reasonable suspicion to pursue them. *Id.* No additional facts are required to establish reasonable suspicion. *Id. See also Barnes*, 296 A.3d at 58 ("While additional facts may negate

reasonable suspicion, [***Illinois v. Wardlow***, 528 U.S. 119 (2000)] requires no additional facts to establish reasonable suspicion.").

Thus, the testimony at the suppression hearing, viewed in the light most favorable to Hutchinson, establishes that Hutchinson fled, without provocation, when he saw Officer Deperro exit his vehicle in a high crime area. This evidence establishes reasonable suspicion that is sufficient to justify an investigatory stop of Hutchinson. ***Barnes***, ***supra***. Hutchinson admitted below that during his flight from the officers, he "discarded a firearm which was contained in his waistband or he fell at the entrance of an alleyway and abandoned the firearm there…." Memorandum of Law at 14. We conclude that this evidence established that Hutchinson's behavior manifested a clear intent to relinquish control of the handgun in an attempt to distance himself from it. ***See Byrd***, ***supra***. That is, Hutchinson abandoned the weapon when he discarded it during his retreat from the officers.

Hutchinson maintained that the abandonment was caused by the officers' unlawfully chasing him without either reasonable suspicion or probable cause. However, "[a] police cruiser passing through the neighborhood on routine patrol does not amount to police coercion compelling the abandonment of contraband." ***Byrd***, 987 A.2d at 792-93 (citing cases). When the police vehicle passed the men standing on the street, neither Hutchinson nor his compatriots were deprived of their freedom in any significant way. The officers did not engage in activities which could be called unlawfully coercive acts, as they merely exited the vehicle. Further, there is

- 10 -

no evidence that police specifically showed any interest in Hutchinson prior to his discarding the handgun. They did not call out to him by name. In fact, no evidence was submitted that police had said **anything** to the men before they ran; Officer Deperro testified, "[O]nce I stepped out of my vehicle, that's when the males fled on foot." N.T. Hearing at 11. It was Hutchinson's fear of detection while in possession of an unlawful firearm, rather than any threat or show of force by police, which induced him to flee the scene.

After review, we conclude that Hutchinson could not have reasonably believed that his freedom of action was being restricted by unlawful police conduct prior to abandoning the weapon. It is clear to this Court that it was Hutchinson's own fear of being arrested, as opposed to any improper show of force by the officer, which caused him to abandon the gun. Therefore, the doctrine of forced abandonment is unavailable to Hutchinson; once the weapon was abandoned, the police were free to retrieve it and use it for evidentiary purposes.

The trial court in this case agreed that unprovoked flight in a high crime area amounts to a finding of reasonable suspicion. *See* TCO at 8 ("[Hutchinson's] presence in a high[]crime area coupled with his flight provided police with reasonable suspicion."). Following this statement, however, the trial court reasoned that suppression was warranted because Hutchinson had been placed in custody without probable cause, which could not be countenanced. The trial court declared:

> [T]his [c]ourt was not informed how the firearm was recovered nor how the officers associated [Hutchinson] with the firearm. … There was no evidence as to whether the firearm was found on [Hutchinson's] person or whether it was abandoned by [Hutchinson] while he fled. This [c]ourt is left to guess as to the level of intrusion that occurred which resulted in the recovery of the firearm.

*Id.* Yet, these factors, occurring after the foot chase which Hutchinson claimed was performed without justification, are irrelevant to the issue of whether Hutchinson was forced to abandon his firearm. They also are not argued in Hutchinson's motion to suppress.

We conclude that the trial court erred in granting suppression on a theory not presented in the motion to suppress. Our Rules of Criminal Procedure require that a motion to suppress "state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). In Hutchinson's motion, he argued the issue of forced abandonment under *Jeffries*. He did not allege the lack of probable cause to arrest him; he argued that suppression of the gun was required due to forced abandonment. Further, Hutchinson did not amend his motion to seek release from custody due to the lack of probable cause to arrest him. As a result, the Commonwealth did not, and had no need to, present evidence or argument directed to the issue of probable cause for an arrest — the issue was whether Hutchinson had been forced to abandon his own property due to improper police conduct.

Once it was determined that the police did not act improperly or force

- 12 -

Hutchinson to abandon his weapon, the issue raised in Hutchinson's motion was decided. Accordingly, it was improper for the trial court to raise the issue of a seizure occurring despite the lack of probable cause, and rule upon it in Hutchinson's favor, when he never raised the issue in any suppression motion. *Commonwealth v. Banks*, 165 A.3d 976, 981 (Pa. Super. 2017) (reversing the grant of suppression when the defendant argued only that officers did not have reasonable suspicion to search his residence, but the trial court determined that he had been improperly seized by police prior to the search). *See also Commonwealth v. Whiting*, 767 A.2d 1083 (Pa. Super. 2001) (finding that the trial court abused its discretion and erred as a matter of law in granting suppression of a defendant's statements, as well as evidence obtained following a search of his home and car, when the defendant had only argued the lack of reasonable suspicion to search his home; the defendant waived any challenge to the evidence seized from his car).

In conclusion, police had reasonable suspicion to conduct an investigatory stop of Hutchinson based upon his immediate and unprovoked flight from them in a high crime area. Thus, no initial illegal police conduct caused the abandonment at issue here; it was a voluntary act done by Hutchinson in an attempt to avoid being caught with the weapon. Therefore, the weapon ultimately recovered may be used at Hutchinson's trial. *Byrd*, *supra*; *James*, *supra*. The court erred in granting suppression.

Order granting suppression reversed. Case remanded. Jurisdiction relinquished.

- 13 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>6/6/2025</u>