J. S42035/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
                Appellant :
:
        v. :
:
MALIK K. COLLES, :
:
                Appellee : No. 113 EDA 2014

Appeal from the Order Entered December 4, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0000625-2013

BEFORE: SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED MARCH 03, 2016**

This Court previously remanded this matter to determine if the Commonwealth perfected this interlocutory appeal[1] from the Philadelphia County Court of Common Pleas' order suppressing the Commonwealth's evidence against Appellee, Malik K. Colles. The trial court has responded and filed a supplemental record. The Commonwealth claims the trial court erred in concluding that no exigent circumstances justified the police officers warrantless entry into a "speakeasy" where they subsequently observed Appellee attempt to dispose of a handgun. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** Pa.R.A.P. 311(d).

On December 29, 2012, at 4:00 a.m., "numerous" Philadelphia police officers were conducting "an illegal liquor establishment check at 4721 Oxford Avenue." N.T. Suppression, 10/10/13, at 6. Officer Winkler[2] told his partner, Officer Robert Bakos, that he "observed a male with a sawed-off shotgun tucked inside his jacket." *Id.* at 7. Officer Bakos testified he also saw a shotgun "slung over [the male's] shoulder[ and] protruding from his jacket." *Id.* at 10. Officers Bakos and Winkler "engaged that male in a foot pursuit" to the front door of the establishment, and the individual entered the building. *Id.* at 7. According to Officer Bakos, "[A]s we attempted to get into the front door, another male attempted to lock us out. We were able to push the door open." *Id.*

Once inside, the officers went to the third floor, where there were approximately 75 to 100 people, a bar, a stage, and a DJ. *Id.* Officer Bakos testified Officer Winkler "recovered a sawed-off shotgun."[3] *Id.* Officer Bakos was "investigating other males[,]" when he heard another officer yell for help. *Id.* He observed Officer Vitaliy St. Onge "struggling" with Appellee. *Id.* at 7-8. Officer Bakos ran to assist Officer St. Onge and observed a firearm "in close proximity." *Id.* at 8. He seized the firearm, a

---

[2] Officer Winkler did not testify at the suppression hearing, and his first name is not indicated in the record.

[3] The Commonwealth did not present additional evidence regarding the shotgun seized inside the establishment.

.25 caliber Raven handgun loaded with seven rounds, and assisted Officer St. Onge with taking Appellee into custody. *Id.*

Officer St. Onge testified he participated in the illegal liquor establishment check. *Id.* at 15. He stated he saw Officer Bakos chasing "an unknown black male." *Id.* Officer St. Onge exited his vehicle, joined the pursuit, and ran to the third floor of the establishment. *Id.* He recalled that Officer Bakos stopped the male and began an investigation. *Id.* at 15, 19. Meanwhile, Officer St. Onge was "just standing there making sure the scene was safe[,]" when he observed Appellee seated at the bar, "facing away from [him]." *Id.* at 15. According to Officer St. Onge:

> I observed [Appellee's] body pressed against . . . the edge of the bar. And that's when I observed him discarding a silver handgun between his legs.
>
> . . . I approached [Appellee]. He looked in my general direction. He stood up and he started walking away. I grabbed him by his arm, I believe. And that's when a short struggle ensued. He clearly was trying to move away from me and from the location of where he discarded the weapon.

*Id.* at 15-16.

On cross-examination, Appellee's counsel asked Officer St. Onge whether he saw the unknown male "doing anything illegal" before chasing him into the establishment. The officer testified he did not recall seeing "anything." *Id.* at 19-20.

Appellee was charged with resisting arrest and possessing a firearm without a license.[4] On June 5, 2013, Appellee filed a motion to suppress the evidence against him, asserting "[t]he Officers['] entry into the establishment was an unlawful search and seizure in the absence of a signed search warrant" and "there were no exigent circumstances which negated the requirement for a search warrant." Appellee's Mot. to Suppress Evidence, 6/5/13, at ¶ 2, 2(b). The trial court convened a hearing on October 10, 2013, at which Officers Bakos and St. Onge testified. The Commonwealth argued that (1) the officers "did not need a search warrant to enter the building" because they were in "hot pursuit" and (2) there was no evidence the establishment was a private property. N.T., 10/10/13, at 23-24. The trial court took the matter under advisement. On December 4, 2013, the court announced it was granting Appellee's motion because it found "there [were] no exigent circumstances . . . ." N.T., 12/4/13, at 2. The court did not enter further findings of fact or conclusions of law.

The Commonwealth filed a Pa.R.A.P. 1925(b) statement on Friday, January 3, 2014, the thirtieth day after the court's ruling. That same day, it attempted to file a notice of appeal, but that document was "filed with a defect in that it was electronically filed into the wrong category." N.T., 10/26/15, at 3. The Commonwealth refiled its notice of appeal on the

---

[4] 18 Pa.C.S. §§ 5104, 6106.

- 4 -

following business day, Monday, January 6, 2014, when it received notice that its initial filing was rejected. *Id.*

The trial court prepared a Pa.R.A.P. 1925(a) opinion. The court determined, *inter alia*, "Officer Bakos' claim that [the officers'] warrantless entry was the result of a hot pursuit of a male observed with a sawed-off shotgun does not have the ring of truth under these circumstances . . . ." Trial Ct. Op., 1/16/15, at 3.

Preliminarily, we must consider the facial untimeliness of the notice of appeal and the supplemental record prepared by the trial court. **See Commonwealth v. Green**, 862 A.2d 613, 615 (Pa. Super. 2004) (*en banc*) (reiterating timeliness of notice of appeal implicates this Court's jurisdiction). Instantly, the parties agree the trial court entered its order granting suppression on December 4, 2013, and the Commonwealth attempted to file its notice of appeal electronically on January 3, 2014, the thirtieth day after the order. The Commonwealth filed a Pa.R.A.P. 1925(b) statement that same day. The court credited the Commonwealth's explanation that its failure to file a notice of appeal on January 3rd was due to a technical error and it promptly refiled after it received notice of the filing's rejection.[5] N.T., 10/26/15, at 3. Under these circumstances, we discern no basis to disturb

---

[5] The Commonwealth averred it "re-E-filed" its notice of appeal. N.T., 10/26/15, at 3. We infer that the attempted January 3, 2014 filing contained the same Pa.R.A.P. 311(d) certification as the actual January 6th filing in the record.

the court's determination that the Commonwealth's attempted filing of the notice of appeal perfected this appeal. *See Commonwealth v. Willis*, 29 A.3d 393, 395-96 (Pa. Super. 2011).

The Commonwealth presents the following question for review:

> Where officers in pursuit of a fleeing man with a gun entered a bar and saw [Appellee] respond by throwing his own illegal firearm to the floor, did the [trial] court err in suppressing [Appellee's] gun on the ground that the officers needed a warrant to enter notwithstanding the pursuit?

Commonwealth's Brief at 4.

The Commonwealth asserts, in relevant part,

> In its opinion, written over one year after the suppression hearing, the [trial] court belatedly attempts to justify its suppression order by stating, for the first time, that it did not find credible the uncontradicted testimony of the two officers who explained that they entered the building because they were pursuing a man with a sawed-off shotgun. However, in violation of Criminal Rule 581(I),[ ] the [trial] court never made findings of fact and conclusions of law on the record.
>
> \* \* \*
>
> Where, as here, the [trial] court fails to make factual findings on the record, "the appellate court should consider only the evidence of the prevailing suppression party . . . and the evidence of the other party . . . , that, when read in the context of the entire record, remains uncontradicted." Therefore, this Court should disregard the [trial] court's after-the-fact attempt to justify its suppression ruling and focus only on the uncontradicted evidence presented by the Commonwealth.

*Id.* at 10-11 (citations omitted). The Commonwealth asserts there is differing authority regarding an appellate court's reliance on a Pa.R.A.P.

1925(a) opinion for findings of fact and credibility when the trial court did not comply with Pa.R.Crim.P. 581(I). *Id.* at 12 n.3. (discussing, *inter alia*, ***Commonwealth v. Millner***, 888 A.2d 680 (Pa. 2005), and ***Commonwealth v. Reppert***, 814 A.2d 1196 (Pa. Super. 2002) (*en banc*)). It relies on ***Millner*** to argue that a reading of the present record entitles it to relief.[6] ***See id.*** at 11-12. We disagree.

As noted by the Commonwealth, our standard of review is as follows:

> [W]hen an appellate court reviews the ruling of a suppression court, we consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record,[7] remains uncontradicted. We must "first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom."

---

[6] The Commonwealth has abandoned its claim that the "speakeasy" should not be deemed private property. ***See*** N.T., 10/10/13, at 23-24; Commonwealth's Brief at 4, 7; ***see also*** Commonwealth's Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 1/3/14. Appellee has not filed a brief.

[7] The Pennsylvania Supreme Court, in ***In re L.J.***, 79 A.3d 1073 (Pa. 2013), has more recently clarified that the scope of review for a suppression issue is limited to the record available to the suppression court. ***In re L.J.***, 79 A.3d at 1085, 1089. However, ***In re L.J.***, which was decided on October 30, 2013, is prospective and clearly does not apply when both the proceeding was commenced and the suppression hearing occurred before the date of that decision. ***See id.*** at 1088-89 & n.19; ***Commonwealth v. Eichler***, ___ A.3d ____, ___, 2016 WL 410018 at *4 (Pa. Super. Feb. 2, 2016). Moreover, because there was no trial in the instant case, the specific concerns addressed in ***In re L.J.***—*i.e.*, reviewing the trial testimony to support a suppression ruling—are not present in this appeal. ***See In re L.J.***, 79 A.3d at 1080-82.

***Commonwealth v. Rosas***, 875 A.2d 341, 346 (Pa. Super. 2005) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Dutrieville***, 932 A.2d 240, 242 (Pa. Super. 2007) (citation omitted).

Pennsylvania Rule of Criminal Procedure 581(I) states:

> At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.

Pa.R.Crim.P. 581(I).

> A specific and contemporaneous announcement of suppression findings of fact and conclusions of law serves at least two salutary purposes. First, it permits the losing party to make a more intelligent assessment of whether or not to burden the appellate justice system with an appeal of the suppression ruling, particularly in cases of contested evidence. A defensible credibility-based decision may dissuade an appeal, whereas a purely legal ruling may make clear that further review is appropriate.[ ] Second, . . . in cases where suppression is denied . . . Rule 581(I) is essential to ensuring that the trial judge and the appellate courts will have a record upon which they can timely and meaningfully discharge their responsibilities.

***Millner***, 888 A.2d at 688-89.

Instantly, there is some merit to the Commonwealth's assertion that it could not discern the precise basis of the trial court's terse statement that "there [were] no exigent circumstances . . . ." N.T., 12/4/13, at 2. The court, as it later indicated in its Pa.R.A.P. 1925(a) opinion, disbelieved the

- 8 -

circumstances alleged by the Commonwealth—*i.e.*, the observation of an individual with a sawed off shotgun and the pursuit of the individual into the establishment. Alternatively, though less probably, the court may have found that the circumstances existed, but did not constitute an exigency. Thus, we accept the Commonwealth's first premise that the trial court's ruling did not comport with the purposes of Rule 581(I). ***See Millner***, 888 A.2d at 688-89.

However, we find no support for the Commonwealth's suggested remedy for noncompliance with Rule 581(I), namely, **disregarding** the credibility and factual findings in the trial court's Pa.R.A.P. 1925(a) opinion. ***See*** Commonwealth's Brief at 11-12. The general remedy is a remand for compliance with Rule 581(I). ***See Commonwealth v. Grundza***, 819 A.2d 66, 68 (Pa. Super. 2003). However, we may consider the merits of an appeal if "a remand for compliance would not serve the interests of judicial economy or justice." ***See Millner***, 888 A.2d at 689; ***accord Reppert***, 814 A.2d at 1200 (relying on findings set forth in Pa.R.A.P. 1925(a) opinion); ***Dutrieville***, 932 A.2d at 243 n.2 (same).

In ***Millner***, the suppression hearing evidence was contested and the Pennsylvania Supreme Court noted the "disservice attending" the trial court's failure to comply with Rule 581(I). ***See Millner***, 888 A.2d at 689 n.4. However, the ***Millner*** Court did not disregard the trial court's findings of fact and credibility. Rather, it addressed narrow legal issues that were

determinable based on the application of the proper standard of review to the record.[8]  *See id.*  The Court further noted that "[t]he Commonwealth willingly pose[d] its argument under the version of facts most harmful to its position."  *See id.* at 689.

Thus, our review reveals no support for the Commonwealth's suggestion that we disregard belated findings of fact and credibility set forth in a Rule 1925(a) opinion.  Instead, this Court remains bound to the trial court's findings that are supported in the record.  *See Dutrieville*, 932 A.2d at 242; *Rosas*, 875 A.2d at 346.

In the instant case, Officer Bakos testified that Officer Winkler told him he saw a man with a sawed-off shotgun and that he (Officer Bakos) personally observed a shotgun being carried by the unknown individual before giving chase.  N.T. at 7, 10.  Officer St. Onge, however, was not able to corroborate Officer Bakos' testimony and joined the chase only after he saw Officer Bakos pursuing the individual.  Officers Bakos and St. Onge gave inconsistent testimony regarding whether the individual was apprehended inside the establishment.  The Commonwealth did not adduce evidence

---

[8] Specifically, the *Millner* Court addressed "[the] proper understanding of the defendant's preliminary burden at a suppression hearing" regarding a reasonable expectation of privacy.  *Millner*, 888 A.2d at 690.  It emphasized in that case that no evidence demonstrated the defendant possessed a privacy interest in a subject vehicle.  *Id.* at 692.  Thus, the *Millner* Court found legal error in the trial court's suppression of a gun found in the subject vehicle and this Court's affirmance of the trial court.  *See id.* at 692.

corroborating Officer Bakos' testimony that Officer Winkler seized a shotgun inside the establishment. The trial court also found probative Officer Bakos' testimony that the officers were engaged in a "liquor establishment check" without a warrant.

In light of the foregoing, we discern no basis upon which to conclude that the trial court's belated credibility determination and factual findings were manifestly unreasonable. *See Dutrieville*, 932 A.2d at 242; *Rosas*, 875 A.2d at 346. Moreover, we conclude that a remand for perfect compliance with Pa.R.Crim.P. 581(I) "would not serve the interests of judicial economy or justice" as the trial court's rejection of the factual basis of the Commonwealth's claim of exigent circumstances had some support in the record. *See Millner*, 888 A.2d at 689; *accord Reppert*, 814 A.2d at 1200; *Dutrieville*, 932 A.2d at 243 n.2. Lastly, because we are bound by the trial court's finding that the officers did not observe the unknown male carrying a shotgun, we discern no legal error in the trial court's rejection of the Commonwealth's claim that that exigent circumstances justified the officers' warrantless entry into the establishment.

Order affirmed.

Shogan, J. joins this memorandum.

Mundy, J. concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2016