2023 PA Super 224

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JACQUAY T. HALL | : | |
| | : | |
| Appellant | : | No. 718 WDA 2022 |

Appeal from the Judgment of Sentence Entered May 18, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0004956-2021

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.*

OPINION BY MURRAY, J.:                    **FILED: November 3, 2023**

Jacquay T. Hall (Appellant) appeals from the judgment of sentence imposed following his jury conviction of fleeing or attempting to elude a police officer, accidents involving death or personal injury, accidents involving damage to an attended vehicle or property, and false reports by reporting an offense that did not occur.[1]   After careful review, we affirm Appellant's judgment of sentence.

Relevant to this appeal, the facts established at the suppression hearing are not in dispute.  On April 26, 2021, at around 4:00 a.m., Pittsburgh Police Officer Phillip Szalla and his partner, Officer Zachary Swarrow, observed a 2014 Nissan Altima exceeding the speed limit in a residential area.  When the officers initiated a traffic stop, the Nissan pulled to the side of the road with

---

* Retired Senior Judge assigned to the Superior Court.

[1] **See** 75 Pa.C.S.A. §§ 3733(a), 3742(a), 3743(a); 18 Pa.C.S.A. § 4906(b)(1).

its brake lights engaged. However, the vehicle was not placed in "park." As the officers exited their vehicle, the Nissan fled the scene. The officers issued a radio alert about the incident and began canvassing the area.

Minutes later, Officers Szalla and Swarrow received an emergency call about a nearby motor vehicle accident. Arriving at the scene, they found an accident involving the Nissan Altima that fled their traffic stop. The Nissan had collided, head-on, with a sport utility vehicle (SUV). The two occupants of the SUV stood outside their vehicle. After speaking with the SUV's occupants, the officers approached the Nissan to check for injured passengers. Upon opening the driver's door, Officer Szalla saw, in plain view, a firearm on the driver's floorboard; a cell phone on the driver's seat;[2] and a small amount of marijuana near the gearshift. Because the Nissan was disabled and obstructing traffic, the officers arranged to have the vehicle towed. For safety reasons, the officers seized the firearm prior to towing.

The officers subsequently discovered the Nissan was registered to Appellant. Officers went to Appellant's house between 5:00 and 6:00 a.m. that morning, but no one answered the door. At about 9:00 a.m., Appellant called police and reported that his Nissan had been stolen. Appellant also told police that his cell phone was in the Nissan. According to Appellant, only he knew the passcode to unlock the cell phone.

_____

[2] The cell phone was receiving text messages and phone calls.

Police applied for a search warrant for the contents of Appellant's cell phone. The warrant application, submitted by Officer Swarrow, identified the following material as the items to be searched:

> All data with time stamps including personal communications in the form of text, writings, phone numbers, contacts, call history, SMS messages, images or videos contained in the devices as well as information stored, and/or attached to the body of the phone associated with Gray iPhone with black and blue case.

Omnibus Pretrial Motion, 10/14/2021, Exh. B at 1.

Officer Swarrow's affidavit of probable cause, attached to the warrant application, detailed the scope of the requested search of the cell phone:

> I am respectfully requesting a search warrant for the Gray iPhone with black and blue case recovered from the driver's seat of the vehicle during the incident on 04/26/2021. I am requesting to search any texts, calls or other media[-]related application that have time stamped messages and information to assist with my investigation to find out the driver of the vehicle. Based on this warrant, I am requesting a search of Gray iPhone with black and blue case for all and any time stamped information or data stored within the body of the cell phone[], to include [SIM] card and phone memory, including any contacts, phone numbers, messages instant or text, all pictures and all video stored. Incoming and outgoing calls, carrier IP Number and voice messages and missed calls. Along with any data which is related to the distribution, sale or arrangement of drug transactions contained within the cell phone[].

*Id.* at 3.

Upon approval of the search warrant, police extracted data from the cell phone implicating Appellant in the head-on collision and flight from the prior traffic stop. Officers learned from the phone's data that several outgoing calls were made after the Nissan was purportedly stolen. One call lasted 35 minutes and was made to a one of the phone's saved contacts. Extracted cell

phone data rebutted Appellant's claim that his vehicle had been stolen and driven by someone else at the time of the traffic stop and collision.

Prior to trial, Appellant filed a motion to suppress evidence recovered from his cell phone and Nissan. Suppression Motion, 10/14/21. Appellant claimed officers lacked probable cause or exigent circumstances to seize the items from his vehicle. *Id.* ¶¶ 9-11. According to Appellant, the items were not in plain view, as officers had no lawful right to open the vehicle's door and look inside. *Id.* at ¶¶ 16-17. Appellant further claimed police had no basis to search the contents of his phone, and the search warrant was unconstitutionally overbroad. *Id.* ¶¶ 27-31.

The trial court conducted a suppression hearing on October 28, 2021. Following the hearing, the suppression court denied Appellant's motion. *See* N.T. (Findings and Conclusions), 11/18/2021, at 9. The court found the Nissan's driver had fled the scene and "the car was left abandon[ed], thus relinquishing a reasonable expectation of privacy in the vehicle." *Id.* at 7. The suppression court further found officers had opened the Nissan's door "to ensure there was no one inside or injured in the vehicle"; "observed in plain view the firearm in question laying on the driver's side floor board"; and "observed the marijuana on or near the center console, and the cell phone, which was on the driver's side seat." *Id.* The suppression court explained,

> the car was properly towed and the search warrant applied for. The police were authorized to [tow the vehicle] by the City of Pittsburgh Police policy, as well as Title 75 [Pa.C.S.A. §] 3352(c)(5) and 3352(b) to tow an abandoned vehicle obstructing traffic, and also a danger to the flow of traffic.

- 4 -

*Id.* at 7-8.

The suppression court further found the seizure of the firearm was supported by probable cause and exigent circumstances. *Id.* at 8. Additionally, the suppression court found any illegality related to the seizure would have been cured by the firearm's inevitable discovery pursuant to an inventory search. *See id.*

As to the search of the cell phone's data, the court found

the cell phone was found abandoned in the vehicle and likely contained evidence of the owner or user of that phone at or around the time of the crimes in question.

*Id.* at 9. The suppression court ruled the search warrant was not overbroad. *Id.*

The case proceeded to trial. A jury convicted Appellant of the above offenses, and the trial court sentenced Appellant to an aggregate prison term of one to two years, followed by one year of probation. Appellant timely filed the instant appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for review:

I. Whether the suppression court erred in denying [Appellant's] omnibus pre-trial motion to suppress the gun and cell phone, where the police searched his vehicle without a warrant and there were no exigent circumstances?

II. Whether the suppression court erred in denying [Appellant's] omnibus pre-trial motion to suppress the cell phone, where the search warrant failed to establish probable cause and the warrant was impermissibly broad?

Appellant's Brief at 6 (capitalization modified).

Appellant first argues the suppression improperly denied suppression of the firearm, cell phone and marijuana police found inside the Nissan. *Id.* at 15. Appellant claims "police did not have exigent circumstances to justify their warrantless entry and search of" the Nissan. *Id.* Appellant disputes the finding that officers opened the vehicle's door "to ensure there were no injured occupants inside." *Id.* at 16. Appellant relies on Officer Szalla's testimony that, looking through the Nissan's windows, he saw no one inside. *Id.* Additionally, Appellant claims the occupants of the SUV involved in the crash informed police that the Nissan's driver had fled. *Id.* Appellant asserts,

> [b]ased on the above facts, the officers clearly knew prior to the opening of the Nissan's door that the vehicle contained only one occupant, the driver, and that he was no longer inside but had left the area. As such, there [were] no exigent circumstances justifying the officers' immediate warrantless entry and search of the Nissan.

*Id.* Appellant contends officers "did not have specific and articulable facts from which to believe [Appellant] needed aid." *Id.* at 18.

Appellant also claims the suppression court improperly applied the inevitable discovery doctrine. *Id.* Appellant argues the doctrine does not apply where the search warrant was premised, "even in part, on information obtained from an unlawful search." *Id.* Appellant points out Officer Swarrow's admission that he did not conduct an inventory search of the Nissan. *Id.* at 19.

When reviewing a ruling on a suppression motion, our standard of review is well settled:

> [W]e are bound by the suppression court's factual findings that are supported by the record[,] but we review its legal conclusions *de novo*. Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by [the defendant].

***Commonwealth v. Kane***, 210 A.3d 324, 329 (Pa. Super. 2019) (citations and quotation marks omitted).

It is the suppression court's sole province, as factfinder, "to pass on the credibility of witnesses and the weight to be given to their testimony." ***Commonwealth v. Dutrieville***, 932 A.2d 240, 242 (Pa. Super. 2007) (quoting ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted)). "If the evidence supports the findings of the trial court, those findings bind us and we may reverse only if the suppression court drew erroneous legal conclusions from the evidence." ***Dutrieville***, 932 A.2d at 242 (citation omitted).

As this Court has explained,

> [b]oth the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy. An expectation of privacy exists if a person has a subjective expectation of privacy that society is willing to recognize as legitimate and reasonable. Where there exists a reasonable expectation of privacy, Article I, Section 8 and the Fourth Amendment generally require police to obtain a warrant, issued by a neutral and detached magistrate and founded upon probable cause, prior to conducting a search or seizure of a person

and/or a person's property, unless one of the few well delineated exceptions apply.

**Commonwealth v. Loughnane**, 173 A.3d 733, 741 (Pa. 2017) (citations omitted). "In determining whether a person's expectation of privacy is legitimate or reasonable, we must consider the totality of the circumstances[,] and the determination ultimately rests upon a balancing of the societal interests involved." **Kane**, 210 A.3d at 330 (citation omitted).

To prevail on a suppression motion,

a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership[,] or possessory interest. Simply put, **no one has standing to complain of a search or seizure of property that he has voluntarily abandoned.**

**Id.** (emphasis added); **see also Commonwealth v. Byrd**, 987 A.2d 786, 790 (Pa. Super. 2009) ("It is axiomatic that a defendant has no standing to contest the search and seizure of items which he has voluntarily abandoned." (citation omitted)).

Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. The issue is not abandonment in the strict property-right sense, *but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.*

**Byrd**, 987 A.2d at 790 (emphasis in original) (quoting **Commonwealth v. Shoatz**, 366 A.2d 1216, 1220 (Pa. 1976)).

Instantly, the suppression court found that following the collision, the Nissan's driver "fled the scene, and the car was left abandon[ed], thus relinquishing a reasonable expectation of privacy in the vehicle." N.T., 11/18/21, at 7. The suppression court's finding is supported by the evidence.

At the suppression hearing, Officer Szalla testified that on April 26, 2021, at around 4:00 a.m., he and his partner observed a 2014 Nissan Altima speeding through a residential area. N.T. (Suppression Hearing), 10/28/22, at 4. Officer Szalla pulled his police cruiser behind the Nissan and initiated a traffic stop. *Id.* at 5. Although the Nissan pulled over with its brake lights activated, the vehicle was not placed in "park." *Id.* As Officer Szalla approached, the Nissan fled at a high rate of speed. *Id.* at 5. After issuing a radio alert, Officer Szalla and his partner, Officer Swarrow, began canvasing the area. *Id.* at 5-6.

Two minutes later, the officers received an emergency call reporting a vehicle accident. *Id.* at 6. At the accident scene, Officer Szalla found the Nissan had collided, head-on, with an SUV. *Id.* Officer Szalla found two women standing near the SUV. *Id.* at 6-7. After making certain the women were not injured, Officer Szalla asked if they "observed the driver. And they repeated several times, get him, get him." *Id.* at 8. The women indicated the Nissan had "wrecked into them." *Id.*

The Nissan was approximately 50 yards from the SUV and stopped in the middle of Lemington Avenue in Pittsburgh. *Id.* at 8, 10. Officer Szalla recognized the Nissan as the same vehicle that had fled their traffic stop. *Id.*

at 8.  As the officers approached the Nissan, they saw "disabling damage to the front end consistent with a head-on collision."  *Id.* at 9.  Officer Szalla opened the Nissan's driver's side door to see if there were injured occupants inside.  *Id.*  He explained, "I was making sure that the driver was not injured, or that he would not be underneath the steering wheel, or anything like that."  *Id.* at 13.

After opening the door, Officer Szalla saw the Nissan's driver-side airbag was deployed.  *Id.* at 19, 41.  In plain view, he observed "a firearm on the driver floorboard and a small amount of marijuana near the gearshift[.]"  *Id.* at 9.  Officers also found a cell phone, on the driver's seat, in plain view.  *Id.* Upon checking the Nissan's license plate, officers learned the vehicle was registered to Appellant.  *Id.* at 16.

Officer Swarrow secured the firearm for safety reasons:  "I observed the firearm, it looked in good operable shape.  I could not tell if the safety was on the firearm or not."  *Id.* at 28.  According to Officer Swarrow, he seized the firearm so "it will not discharge or anything during the tow."  *Id.*  In addition, Officer Swarrow stated:

> There was a cell phone on the driver's seat of the vehicle.  And the cell phone was receiving incoming text messages and calls at the time.
>
> ….
>
> … We seized the cell phone for evidence because we observed it had a low battery and in our training and knowledge, once the phone reaches a certain low battery percentage or it dies, there's a lot of data that's lost.

- 10 -

*Id.* at 18. Appellant later confirmed that he, alone, had the passcode to unlock the phone. *Id.* at 37.

The officers had the vehicle towed to the police station pending their application for a search warrant. *Id.* at 18. According to Officer Swarrow, the vehicle was towed because it was inoperable and obstructing traffic. *Id.* at 32.

Officers went to Appellant's house between 5:00 and 6:00 a.m. that morning, but no one answered the door. *Id.* at 35. At about 9:00 a.m. that same day, Appellant reported to police that his Nissan Altima was stolen. *Id.* at 36. Appellant told police his cell phone was inside of the vehicle. *Id.* at 37. Appellant confirmed that he, alone, knew the cell phone's unique passcode. *Id.* at 47.

Based on the foregoing, the record supports the suppression court's finding that Appellant had abandoned the vehicle following the collision. Consequently, Appellant lacked standing to "contest the search and seizure of items which he has voluntarily abandoned." *Byrd*, 987 A.2d at 790 (citation omitted).

However, even if Appellant had not abandoned the vehicle and its contents, we would affirm the suppression court's ruling. One exception to the warrant requirement is the "emergency aid exception," which our Supreme Court has characterized as belonging to a broader group of exceptions justified by the "community caretaking doctrine." *Commonwealth v. Livingstone*, 174 A.3d 609, 627 (Pa. 2017). Under the community caretaking doctrine,

certain warrantless actions of police officers do not offend constitutional principles, because police are motivated by a "desire to render aid or assistance, rather than the investigation of criminal activity." *Id.* at 627.

The Fourth Amendment does not prevent police officers from conducting a warrantless entry and search when they reasonably believe a person needs immediate aid. *Commonwealth v. Edgin*, 273 A.3d 573, 584 (Pa. Super. 2022).

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving. Additionally, it is a matter of common sense that a combination of events[,] each of which is mundane when viewed in isolation[,] may paint an alarming picture.

*Commonwealth v. Coughlin*, 199 A.3d 401, 407 (Pa. Super. 2018) (*en banc*) (citation omitted). The intrusion "must be commensurate with, and limited to, the perceived need to provide immediate assistance[.]" *Commonwealth v. Wilmer*, 194 A.3d 564, 571 (Pa. 2018).

In addition, the "plain view doctrine" permits a valid warrantless seizure of an item where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the police have a lawful right of access to the item itself. *Commonwealth v. Luczki*, 212 A.3d 530, 546 (Pa. Super. 2019) (citation omitted). Significantly, "[p]olice may seize any evidence that is in

plain view during the course of their legitimate emergency activities." ***Mincey v. Arizona***, 437 U.S. 385, 393 (1978).

Instantly, officers found the Nissan Altima at the accident scene with significant damage indicative of a head-on collision. N.T. (Suppression Hearing), 10/28/22, at 9. Officer Szalla opened the Nissan's driver door to check for injured occupants. ***Id.*** at 9, 13. As Officer Szalla explained, "I was making sure that the driver was not injured, or that he would not be underneath the steering wheel, or anything like that." ***Id.*** at 13.

The suppression court found the officers entered the vehicle because of the potential for injured occupants who would need aid. ***See*** N.T. (Findings and Conclusions), 11/18/22, at 8. Further, the officers observed the firearm, marijuana and cell phone, in plain view, while performing these legitimate emergency duties. ***See id.*** Thus, the suppression court's findings are supported by the evidence discussed above. Even if Appellant had not abandoned the vehicle and its contents, suppression of the firearm, marijuana, and cell phone was not warranted. ***See Mincey***, 437 U.S. at 393; ***Livingstone***, 174 A.2d at 627. Appellant's first issue merits no relief.

Appellant next argues the trial court improperly denied suppression of evidence resulting from the search of his cell phone. Appellant's Brief at 20. Appellant claims the search warrant for the phone was unconstitutionally overbroad, and police lacked probable cause to support the search. ***Id.*** Appellant contends that after he had reported the Nissan and cell phone stolen,

police had no reason to search the cell phone for the purpose of discovering its owner, as they were already in possession of such information – it was [Appellant]. Besides, the warrant was not supported by probable cause to believe that [Appellant's] cell phone contained evidence of criminal activity.

*Id.* at 21.

Appellant argues, even if probable cause exists, the search warrant was overbroad. *Id.* at 22. Appellant asserts there was no justification to search every call, communication, photo, video, or data on the phone's SIM card. *Id.* at 24-25. According to Appellant, "The broad search authorized by the warrant impermissibly revealed a large number of items unrelated to the criminal investigation." *Id.* at 25. Appellant argues, "there was an unreasonable discrepancy between the limited reason for probable cause and searching practically all the phone's data." *Id.*

The suppression court rejected this claim:

As to the issue of the search warrant for the cell phone, the [suppression c]ourt finds that based on the totality of the circumstances, **the cell phone was found abandoned in the vehicle** and likely contained evidence of the owner or user of that phone at or around the time of the crimes in question.

*Id.* at 9 (emphasis added). The trial court reiterated, "The cell phone was clearly abandoned and likely contained evidence of the owner or user of the phone at or around the time of the crimes." Trial Court Opinion, 9/28/22, at 11. The suppression court's finding of abandonment is supported by the evidence. Because the phone was abandoned, Appellant lacked standing to

- 14 -

contest its search and seizure.[3]  ***See Kane***, 210 A.3d at 330.  Accordingly,

Appellant's second issue does not merit relief.

Judgment of sentence affirmed.

Judge McLaughlin joins the opinion.

Judge Pellegrini files a dissenting opinion.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

11/9/2023

---

[3] Given this disposition, we need not address whether the search warrant was unconstitutionally overbroad.