J-A25037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD L. WILLIE | : | No. 2911 EDA 2023 |

Appeal from the Order Entered October 31, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002055-2023

BEFORE: OLSON, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED JULY 18, 2025**

The Commonwealth appeals from the order granting the motion to suppress evidence filed by Donald L. Willie ("Willie").[1] We affirm.

The suppression court provided the following summary of the facts:

At the suppression hearing, the Commonwealth called its only witness, Amtrak Police Officer Daniel Leicht . . .. Officer Leicht testified that on December 27, 2022, at approximately 11:30 a.m., an unknown and unidentified individual approached his "police box" and stated that "there was a guy with a handgun inside of Au Bon Pain."[2] The unknown individual appeared "panicked" about the presence of a gun, so Officer Leicht "decided to take a tactical approach . . . and see if there is anybody brandishing a handgun in their hand."

_____

[1] The Commonwealth is permitted to take an appeal as of right from an order that does not end the entire case where, as here, it certifies that the order "will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

[2] Contrary to the trial court's recollection, Officer Leicht's testimony was that the witness stated the gun was "tucked under [Willie's] left armpit." **See** N.T. 9/28/23, at 8.

Officer Leicht testified that he rode his Segway over to Au Bon Pain, and upon entering the bakery he immediately drew his firearm, stopped [Willie], and seized a handgun that was tucked under [Willie's] armpit. Officer Leicht also testified that he did not receive any complaints from other people[;] rather, the only complaint he received was from the unknown male who approached his police box.

On cross-examination, Officer Leicht admitted that he drew his weapon, and thus seized [Willie], immediately upon alighting from his Segway, *i.e.*, before he even stepped foot inside the store to investigate:

Q. At what point, if you remember, did you draw your weapon?

A. Entering into Au Bon Pain.

Q. I want to walk through that. So, on the video, we see you getting off the Segway and going into the entrance of Au Bon Pain. When you entered the threshold, that's when you withdrew your weapon from your holster, correct?

A. That's correct.[3]

The Commonwealth also introduced Officer Leicht's body-worn camera video footage which depicted the actual interaction between police and [Willie]. At 0:38 seconds into the video, an unknown, middle-aged, bearded white male wearing a flannel shirt and knitted hat[] approaches Officer Leicht and points in the direction of Au Bon Pain (there is no sound in the video at this point). At 0:48 seconds, Officer Leicht gets on his Segway and rides it to Au Bon Pain. At 0:59 seconds, the sound turns on, and at one minute, three seconds (1:03), Officer Leicht states, "We got a walk-up complaint, Au Bon Pain, possible male with a handgun."

At 1:28, Officer Leicht crosses the threshold of Au Bon Bain -- at which point, according to his sworn testimony, the officer's

_____

[3] *See* N.T. Suppression Hearing, 9/28/23, at 13-14.

gun already was drawn. [Willie], however, cannot yet be seen as there are display cases obstructing the view into the bakery. . ..

At 1:34, after Officer Leicht makes his way around the display cases, [Willie] can be seen preparing his coffee at a counter. At that point, with his handgun drawn, Officer Leicht states, "Yo[,] bud." [Willie] responds, "What?" At 1:38, Officer Leicht gestures to a backup officer, who enters the store with his gun drawn as well. At 1:40, Officer Leicht states, "Let me see your hands[,]" and two seconds later at 1:42, he commands, "Don't move. Don't move. Do not move. Do not move."

At 1:49, the second officer shouts, "I said[, D]on't move." At 1:51, [Willie] states, "I'm [just] getting my coffee. I'm getting coffee." At 1:53, a third officer enters the store, also with his gun drawn. At 2:04, Officer Leicht reaches into [Willie's] vest and retrieves a firearm.[1] Finally, at 2:12, Officer Leicht applies handcuffs and arrests [Willie].

[1] It is not clear from the video if the firearm was holstered, in a breast pocket of the vest [Willie] is wearing[,] or simply tucked under [Willie's] armpit, but as the officer approaches, the tip of the gun can be seen. If the firearm is in fact tucked under [Willie's] armpit as the Commonwealth characterizes in its 1925(b) statement, the [c]ourt cannot discern how the weapon remains seemingly suspended without manual pressure as Willie is first seen at the counter attending to his coffee and also immediately before the firearm is removed by Officer Leicht where [Willie] does not appear to be gripping his left arm to his left flank to hold the firearm in place. Thus, th[e c]ourt does not agree with the Commonwealth's contention that [Willie] (manually) had the firearm tucked under his armpit.

*See* Suppression Court Opinion, 1/31/24, at 1-4 (transcript citations, and screen shot omitted, time designations modified).[4]

At the conclusion of the suppression hearing, the court held the case under advisement. Thereafter, at a subsequent hearing, the court suppressed Willie's gun and provided the following findings of fact and conclusions of law:

> On December 27, 2022, at approximately 11:30 a.m., Amtrak Police Officer Daniel Lietch, L-I-E-T-C-H [sic] with the department for 11 years and assigned to 30th Street Station for the past 6 [years], was on patrol at the station when a[n] unknown male in a flannel shirt approached the police box radio station and reported there was a man with a handgun inside Au Bon Pain Bakery.

> The firearm was reported as being tucked under the male's armpit.

> Officer [Leicht] went into the store with a backup officer and they entered with guns drawn. [The man, Willie] was placed under arrest.

> Conclusions of law: The [c]ourt had the opportunity to observe the demeanor of the witness and to evaluate his credibility as well as review portions of the body-worn camera video introduced into evidence.

> Consistent with **Commonwealth v[.] Hicks**, [208 A.3d 916 (Pa. 2019)], the facts do not support [a] finding [of] reasonable articula[ble] suspicion that [Willie] was engaged in any manner of criminal activity on the morning that he was seized.

> [Willie] was seized solely due to the observation of the firearm concealed on his person.

> For these reasons, the defendant's motion to suppress is granted.

---

[4] The Suppression Court's footnote above constitutes a credibility determination supported by the record and therefore not subject to our *de novo* review.

N.T, 10/31/23, at 3-4. The Commonwealth timely appealed and it and the suppression court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue for review:

> Did the [suppression] court err by suppressing a gun that [Willie] tucked under his armpit with an exposed barrel protruding and no perceptible holster in a major transportation hub where people in the area were reacting with alarm and alerting police to the presence of the gun?

Commonwealth's Brief at 3.[5]

The Commonwealth asserts the court erred by suppressing Willie's gun where the police had reasonable suspicion Willie engaged in reckless endangerment ("REAP") and/or disorderly conduct.

The Commonwealth bears the burden of proof at a suppression hearing. It must establish the challenged evidence was not obtained in violation of the accused's constitutional rights. **See** Pa.R.Crim.P. 581(H). When the Commonwealth appeals an order granting a defendant's motion to suppress, this Court considers only the evidence from the defense witnesses[6] together

---

[5] As the suppression court's opinion notes, the Commonwealth phrased the issue slightly differently in its Rule 1925(b) statement:

> Did the court err by suppressing an unholstered gun [Willie] was carrying in a major transportation hub tucked under his armpit, with the barrel protruding out, and where people in the area were reacting with alarm and alerting police to the presence of the gun?

**See** Suppression Court Opinion, 1/31/24, at 5, citing Commonwealth's 1925(b) Statement, 11/15/23.

[6] Willie presented no evidence in this case.

with the evidence of the prosecution that when read in the context of the entire record remains uncontradicted. *See Commonwealth v. Dales*, 820 A.2d 807, 812 (Pa. Super. 2003).

A reviewing court is bound by the suppression court's findings of fact if they are supported in the record but conducts plenary review to determine if the court properly applied the law to the facts. *See Commonwealth v. Dunkins*, 263 A.3d 247, 252 (Pa. 2021); *Dales*, 820 A.2d at 812. It is solely within the province of the suppression court to judge the credibility of witnesses and the weight to be accorded their testimony. *See Commonwealth v. Dutrieville*, 932 A.2d 240, 242 (Pa. Super. 2007). If the facts support the suppression court's findings, those findings are binding and this Court may only reverse if the suppression court drew erroneous legal conclusions from the evidence. *See id*.

There are three types of encounters between the police and citizens: (1) a mere encounter, which carries no official compulsion to stop or respond, (2) an investigative detention, which is temporary unless it results in the formation of probable cause and does not possess the coercive conditions of a formal arrest, and (3) a custodial detention, where the nature, duration, and conditions of an investigative detention "become so coercive as to be, practically speaking, the functional equivalent of an arrest." *Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023) (citation omitted).

To subject a person to an investigative detention, the police must have reasonable suspicion he is engaged in unlawful activity. *See Commonwealth v. Thomas*, 273 A.3d 1190, 1196 (Pa. Super. 2022). Reasonable suspicion exists only where:

> the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*See id*. (citation omitted). To assess reasonable suspicion, a court examines the totality of the circumstances to determine if there was a particularized, objective basis to stop the person suspected of criminal activity. *See Commonwealth v. Green*, 298 A.3d 1158, 1163 (Pa. Super. 2023). Those circumstances must be viewed through the eyes of a trained police officer, *see Commonwealth v. Barnes*, 296 A.3d 52, 57 (Pa. Super. 2023). Only the circumstances known to the officer at the time of the detention are considered in determining the existence of reasonable suspicion. *See Commonwealth v. Rivera*, 311 A.3d 1160, 1164 (Pa. Super. 2024). A person is seized at the moment he is not free to leave a scene. *See Commonwealth v. Adams*, 205 A.3d 1195, 1200 (Pa. 2019). A person's possession of a gun does not in itself provide reasonable suspicion of a crime; "[a]bsent some other circumstance giving rise to a suspicion of criminality, a

seizure based only on carrying a firearm is unreasonable." **See Rivera**, 205 A.3d at 1165 (citation and brackets omitted).

A person commits REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. A person commits disorderly conduct, where, *inter alia*, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S.A. § 5503(a)(4).

The Commonwealth asserts the suppression court misapplied **Hicks** by finding the police lacked reasonable suspicion to stop Willie. It concedes that under **Hicks** possessing a gun in public without more does not provide reasonable suspicion of a crime, but distinguishes **Hicks** because it stated that "no individual expresse[d] any visible indication of Hicks'[s] presence, his possession of his firearm, or the manner in which he carried it," and there was no evidence Hicks "brandished" the gun, whereas here the person who made the report was in a panic and other customers were leaving the store. **See** Commonwealth's Brief at 12-13, citing **Hicks**, 208 A.3d at 950.[7]

_____

[7] We note the language the Commonwealth quotes from **Hicks** is introduced by the phrase "[e]ven viewing the evidence in the light most favorable to the Commonwealth . . .." **See** Hicks at 1250. **Hicks** was a defense appeal; this is a Commonwealth appeal. Unlike **Hicks**, here we do not view the evidence in the light most favorable to the Commonwealth as the defendant prevailed
*(Footnote Continued Next Page)*

The Commonwealth further contends **Hicks** is not controlling because: 1) Willie had his gun in the armhole of his jacket with the barrel protruding outward, not holstered as Hicks's was, 2) a "Good Samaritan" summoned the police "in a panic," 3) a second person in the store pointed to Willie, and other people vacated the store, 4) it would have been hazardous for the police to do nothing, and 5) Willie's "odd behavior" established reasonable suspicion he recklessly endangered others. **See** Commonwealth's Brief at 13. It also claims the suppression court erred among other reasons because it disregarded the threat citizens experienced from Willie's conduct and the unnecessarily dangerous way Willie carried his gun, and improperly concluded the police conducted a "full-on physical seizure" after seizing the gun, which the Commonwealth argues was supported by probable cause. **See** Commonwealth's Brief at 15-19. It asserts reasonable suspicion existed to investigate Willie, and the police had the right to secure Willie's gun as part of that investigation. **See** Commonwealth's Brief at 14-15.

The suppression court found Officer Leicht immediately seized Willie when he drew his gun and entered the store, did so without reasonable suspicion, and arrested Willie without asking a single question. **See** Suppression Court Opinion, 1/31/24, at 9. The court found Willie was not

_____

at the suppression hearing. **See Dales**, 820 A.2d at 812. To the extent there are any disputed issues of fact (although there do not appear to be any), we must view the facts in the light most favorable to Willie.

engaged in criminal activity, thereby invalidating the stop under **_Hicks_**. **_See id_**. The court found the visibility of the tip of Willie's gun was not evidence of criminal activity because any person with a license to own a gun may lawfully carry a gun everywhere in Pennsylvania. **_See id_**. at 10-11. It further determined Willie did not "brandish" the gun, which was innocuously tucked under his armpit. **_See id_**. at 11. The court also stated that "dangerousness" does not constitute a basis for reasonable suspicion absent articulable criminal activity. **_See_** Suppression Court Opinion, 1/31/24, at 13, citing **_Hicks_**. Finally, the court declared the gun could not have presented a "real danger" because the officer was able to grab it by the barrel. **_See id_**. at 14-15.

Although we do not agree with every aspect of the suppression court's reasoning,[8] we find the court did not commit legal error.[9] Under the applicable law, Officer Leicht seized Willie when he pointed his firearm at him. **_See Adams_**, 205 A.3d at 1200. The totality of the facts and circumstances known to the officer at that point was that Willie was in a store with a gun said to be under his left armpit. The officer did not know whether Willie had a license to carry the gun or the manner in which he possessed or displayed the gun. The

---

[8] We do not agree, for example, Officer Leicht seized Willie **before** the officer entered the Au Bon Pain.

[9] Where the result is correct, we may affirm a trial court's decision on any proper ground. **_See Commonwealth v. Lehman_**, 275 A.3d 513, 520 n.5 (Pa. Super. 2022).

- 10 -

information available to the officer did not establish reasonable suspicion that Willie was recklessly engaging in conduct that could place another person in danger of death or serious bodily injury that could establish REAP. The information that a person has a gun does not provide that suspicion and the officer had no further information at the time. *See Rivera*, 205 A.3d at 1165.[10] Nor did the evidence known to the officer provide reasonable suspicion Willie had, with *intent* to cause public inconvenience, annoyance or alarm or recklessly created a hazardous or physically offensive condition sufficient to provide reasonable suspicion of reckless conduct. The officer had no knowledge of Willie's specific intent, nor did the situation as it presented itself bear that out.[11] Likewise, given the facts there was no apparent intent to believe he was behaving recklessly. Under the circumstances in the record, we find support for the suppression court's conclusion that the evidence known to the officer at the time Willie was detained did not establish reasonable suspicion that he was engaged in criminal activity. *See Hicks*, 208 A.3d at 946; *Rivera*, 311 A.3d at 1164.

---

[10] Although Officer Leicht testified the man who alerted him to Willie was in a panic, his body-worn camera did not record their conversation although their interaction is visible on the recording.

[11] The facts of record indicated that when Officer Leicht arrived Willie was preparing a coffee he had presumably just purchased. *See* Commonwealth's Exhibit C-2 (Officer Leicht's body-worn camera) at 0:34.

We do not minimize the difficulty of the circumstances that confronted Officer Leicht when he received a report of a man with a gun in a restaurant in a busy train station during the holiday season. We further acknowledge Willie's decision to keep his gun in his hoodie with its barrel pointed out was somewhat unusual and could well have given a person in his presence pause. However, in light of *Hicks,* which we must follow, at the time Officer Leicht conducted his investigative detention, he did not possess reasonable suspicion under Pennsylvania law that Willie may have been committing a crime. In fact, the video shows that, at the time the police detained Willie, he was using both of his hands to prepare his coffee, his gun was not drawn, and he was clearly not "brandishing"[12] the handgun, which was the officer's stated basis for investigating the report. Accordingly, we affirm the suppression court's ruling.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/18/2025

---

[12] The plain meaning of "brandish" is "1: to shake or waive (something, such as a weapon) menacingly[;] 2: to exhibit in an ostentatious or aggressive manner[.]" https://www.merriam-webster.com/dictionary.

- 12 -